# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS KALIL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 01-2194 (RJL) |
| | ) |
| MIKE JOHANNS, | ) |
| Secretary, United States Department | ) |
| of Agriculture, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER
(July 26, 2005) [#43]

Plaintiff, Thomas Kalil, initiated the instant action against Mike Johanns,[1] Secretary of the United States Department of Agriculture ("USDA"), and plaintiff's two supervisors, Carolyn Cooksie and James Little, in their individual capacities, (collectively "defendants") for, *inter alia*, intentional infliction of emotional distress ("IIED") and violations of plaintiff's rights under the First Amendment to the United States Constitution. Presently before the Court is Cooksie and Little's renewed motion for partial dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. After due consideration of the parties' submissions, the relevant law, and the entire record herein, the Court

---

[1] Former Secretary of the United States Department of Agriculture, Ann Veneman, was originally named in this action. The Court substituted Ms. Veneman with her successor, Mike Johanns, who was sworn into office on January 21, 2005. FED. R. CIV. P. 25(d)(1).

1



GRANTS defendants' motion.[2]

## I. FACTUAL BACKGROUND

Plaintiff, Thomas Kalil, has worked at the USDA since 1973, eventually becoming the Assistant Deputy Administrator for Farm Loan Programs in the Farm Service Agency. Am. Compl. ¶¶ 5, 12-15. Kalil initiated the instant suit against the Secretary of the USDA under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*, and under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.* Am. Compl. ¶ 1. Kalil also sued Carolyn Cooksie and James Little, his immediate supervisors, in their individual capacities, for IIED (Count IV) and violations of his First Amendment rights (Count V) stemming from his supervisors' involvement in his temporary suspension. Am. Compl. ¶ 2. Kalil's IIED claim is based on a myriad of allegations. For example, he claims: Cooksie excluded him from staff meetings, denied him merited salary increases, denied him accurate performance assessments, gave him unfavorable assignments that were not grade appropriate and forced him to be supervised by subordinates. *See* Am. Compl. ¶¶ 56-60. Kalil alleges that these actions caused a decline in his mental, emotional and physical health. *Id.* ¶ 58.

Kalil's First Amendment claim stems from Cooksie's suspension of Kalil in 2002 for fourteen days. *Id.* ¶ 91. Kalil was suspended for a series of alleged activities; to wit: (1)

---

[2] Defendants filed their first motion for partial dismissal on June 29, 2004. On February 18, 2005, this Court denied the motion without prejudice and ordered additional briefing on whether Cooksie and Little were acting in the scope of their authority as employees of the United States at the time of the incident alleged in the Amended Complaint. The instant renewed motion followed.

interfering with ongoing litigation; (2) releasing a report outside the Farm Service Agency without prior approval; (3) failure to treat his supervisor with respect; and (4) failure to follow instructions. Defs.' Rep., Attach. B at 2. Kalil maintains that defendants' explanations are pretextual and that he was suspended as retaliation for his involvement in the *"Stahl"* litigation, which was a class action suit filed by minority farmers against the USDA. *See* Am. Compl. ¶ 91. Moreover, Kalil contends that his involvement in the *"Stahl"* litigation was a valid exercise of his First Amendment right to "report [] matter[s] of public concern." *Id.* ¶ 129. Kalil appealed his suspension to the Merit Systems Protection Board (MSPB), but his request for relief was denied. Defs.' Rep., Attach. B at 4. The MSPB found that the agency had proven that it would have taken the same personnel action regardless of any whistle-blowing actions taken by Kalil. *Id.*

## II. ANALYSIS

*A.   Standard of Review*

This Court will grant a motion to dismiss for failure to state a claim when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); FED. R. CIV. P. 12(b)(6). The Court must accept all of the allegations in the plaintiff's complaint as true and construe them in the light most favorable to the plaintiff. *See Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Konarski v. Brown*, 293 F. Supp. 2d 70, 72 (D.D.C. 2003).

Although a similar standard of review is used when reviewing a motion to dismiss for lack of subject matter jurisdiction, *Caesar v. United States*, 258 F. Supp. 2d 1, 2 (D.D.C. 2003); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), the most glaring difference between the standards is that the Court may consider matters outside of the pleadings when resolving challenges to subject matter jurisdiction. *Konarski*, 293 F. Supp. 2d at 72 n.1 (citing *Hosey v. Jacobik*, 966 F. Supp. 2d 12, 13 (D.D.C. 1997)). On a Rule 12(b)(1) motion, the plaintiff bears the burden of proof. *Vanover*, 77 F. Supp. 2d at 98 (citing *Pitney Bowes Inc. v. United States Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998)).

B.   *Tort Claim*

Defendants Cooksie and Little contend that plaintiff's claim for IIED against them in their individual capacities should be dismissed because: (1) they were acting within the scope of their employment, (2) the United States should be substituted as the proper defendant, and (3) plaintiff's exclusive remedy lies with the Federal Employees' Compensation Act, 5 U.S.C. § 8101 *et seq.* ("FECA"). The Court agrees.

**1.   Scope of Employment**

The Federal Tort Claims Act ("FTCA") allows the Attorney General to certify that an employee who has been sued for a wrongful or negligent act was acting within the scope of his employment at the time of the alleged incident. 28 U.S.C. § 2679(d)(1) (2000). "Upon certification, the employee is dismissed from the action and the United States is substituted as Defendant." *Schneider v. Kissinger*, 310 F. Supp. 2d 251, 264 (D.D.C. 2004). However,

the government's certification is not conclusive because it is the Court that makes the final determination as to the scope of employment issue. *See Haddon v. United States*, 68 F.3d 1420, 1423 (D.C. Cir. 1995). If the Court concludes that the United States is the proper defendant, "the plaintiff's only recourse is to proceed under the Federal Tort Claims Act." *Id.*

State law governs the issue of whether the conduct was within the scope of employment. *Id.* In that regard, the District of Columbia follows the RESTATEMENT (SECOND) OF AGENCY (1958) and takes an expansive view of conduct that is considered within the scope of employment. *Id.* at 1423-24; *Weinberg v. Johnson*, 518 A.2d 985, 988-90 (D.C. 1986); *Lyon v. Carey*, 533 F.2d 649 (D.C. Cir. 1976). The Restatement states that:

> [c]onduct of a servant is within the scope of employment if, but only if:
> [a] it is of the kind he is employed to perform; [b] it occurs substantially within the authorized time and space limits; [c] it is actuated, at least in part, by a purpose to serve the master; and [d] if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

RESTATEMENT (SECOND) OF AGENCY § 228(1).

Regarding the first prong of the Restatement, the District of Columbia law holds that conduct will be of the kind the servant is employed to perform if it is "of the same general nature as that authorized" or is "incidental to the conduct authorized." *Haddon*, 68 F.3d at 1423-24. With regard to the third prong, the Restatement's test states that conduct will be considered within the scope of employment if "it is actuated, at least in part, by a purpose to serve the master." RESTATEMENT (SECOND) OF AGENCY § 228(1). Conversely, conduct that

is "too little actuated by a purpose to serve the master" will not be considered within the scope of employment. RESTATEMENT (SECOND) OF AGENCY § 229. The District of Columbia Circuit has interpreted this test to exclude any conduct that is "committed 'solely for [the servant's] own purposes.'" *Stokes v. Cross*, 327 F.3d 1210, 1216 (D.C. Cir. 2003). Therefore, our Circuit Court has construed acts to be within the scope of employment where self-interest is the predominate motive "so long as the agent is actuated by the principal's business purposes 'to any appreciable extent'." *Freiman v. Lazur*, 925 F. Supp. 14, 19 (D.D.C. 1996) (quoting *Local 1814, Int'l Longshoremen's Ass'n v. Nat'l Labor Relations Bd.*, 735 F.2d 1384, 1395 (D.C. Cir. 1984)). Similarly, intentionally tortious behavior is within the scope of employment when the employee acted at least in part by a desire to serve the employer's interest.[3]

Only the first and third prongs of the Restatement are relevant in this case. The first prong relates to whether the alleged tortious actions are the kind of actions that Cooksie and Little were employed to perform. *See* RESTATEMENT (SECOND) OF AGENCY § 228(1)(a). Although Kalil alleges numerous instances of disparate treatment by his supervisor,[4] his main

---

[3] *See Lyon v. Carey*, 533 F.2d 649 (D.C. Cir. 1976) (upholding jury verdict finding a mattress deliveryman's assault and rape of plaintiff to be within the scope of employment because it followed a dispute regarding delivery and payment of the mattress); *Johnson v. Weinberg*, 434 A.2d 404 (D.C. 1981) (holding that a laundromat employee was acting within the scope of employment when he shot a customer following a dispute over missing clothes); *Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 758 (D.C. 2001) (holding that a reasonable jury could determine a security guard's perpetration of an alleged sexual assault occurred within the scope of employment because it began with a physical search of a suspected shoplifter).

[4] Kalil also alleges that he was excluded from staff meetings and trainings, improperly passed over for salary increases, not provided with required performance standards and assessments, given improper work assignments and denied opportunities to compete for promotions. *See* Am. Compl. ¶¶ 56-62.

allegation is that Cooksie inflicted emotional distress by improperly suspending Kalil. Am. Compl. ¶ 124. And, although Kalil argues that the defendants "engaged in conduct which exceeded the appropriate authority of their positions," *id.*, employee performance evaluations and recommending suspensions are within a supervisor's province. Therefore, Cooksie's conduct, which was subsequently upheld by Little, clearly falls under the rubric of conduct that is "of the same general nature as that authorized." *Haddon*, 68 F.3d at 1423-24.

The third prong relates to whether the conduct "is actuated, at least in part, by a purpose to serve the master." *See* RESTATEMENT (SECOND) OF AGENCY § 228(1)(a). Kalil states that the Amended Complaint "establish[es] that Cooksie was motivated more to protect herself than the Government thus rendering her conduct outside the scope of employment." Pl.'s Opp'n at 12. However, since the District of Columbia takes an expansive view of the scope of employment, *Weinberg v. Johnson*, 518 A.2d 985, 988-90 (D.C. 1986); *Lyon v. Carey*, 533 F.2d 649 (D.C. Cir. 1976), a supervisory decision regarding whether or not to suspend an employee should be considered "actuated, at least in part, by a purpose to serve the master," *see* RESTATEMENT (SECOND) OF AGENCY § 228(1)(a); *see, e.g., Daisley v. Riggs Bank, N.A.*, Civ. No. 03-01820, 2005 WL 1278470, at *10 (D.D.C. May 31, 2005) (concluding that colleague acted within scope of employment when he allegedly conspired to have plaintiff terminated in accord with his employer's business); *Richard v. Bell Atlantic Corp., Inc.*, 976 F. Supp. 40, 50 (D.D.C. 1997) (noting that discriminatory intent on the part of a supervisory employee who fires subordinate does not take the action out of the scope of

employment).

Plaintiff's contention that the Court cannot make a decision regarding whether defendants were acting within the scope of their authority without first allowing discovery and a hearing, Pl.'s Opp'n at 8, is erroneous. Our Circuit Court has held that the Attorney General's certification is *prima facie* evidence that the employee was acting within the scope of his or her employment, *Kimbro v. Velten*, 30 F.3d 1501, 1509 (D.C. Cir. 1994), and that the plaintiff bears the burden to rebut this presumption, *Stokes*, 327 F.3d at 1214. Additional discovery is only necessary when there is a "genuine dispute of fact material to the scope-of-employment issue." *See Koch v. United States*, 209 F. Supp. 2d 89, 92 (D.D.C. 2002) (citing *Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1153 (4th Cir. 1997)). Such discovery would be appropriate only when a plaintiff "alleges sufficient facts that, taken as true, establish that the defendants' actions exceeded the scope of their employment." *Stokes*, 327 F.3d at 1214.[5] Kalil has not done so here.

As an alternative, Kalil alleges that he is entitled to discovery and an evidentiary hearing because the government's certification is "based on a different understanding of the facts than is reflected in the complaint." *Id.* at 1214. Kalil, however, is not specific as to

---

[5] The facts in *Stokes* are instructive here. In *Stokes*, the plaintiff filed a defamation suit against several of his co-workers at the United States Government Printing Office. *Id.* at 1211. Stokes, a member of the Uniformed Police Branch, received a Notice of Proposed Adverse Employment Action ("Notice") for failing to provide adequate assistance to his subordinate during a trespass incident. *Id.* at 1212. He claimed that the men who filed the Notice not only failed to investigate, but also destroyed evidence, coerced others to submit false affidavits and engaged in other criminal activity. *Id.* at 1216. Stokes sought to gain additional information to prove that it was "[his co-workers'] intent to prevent the best candidate, namely Stokes, from getting the promotion." *Id.* Our Circuit Court held that these were sufficient facts to warrant discovery and an evidentiary hearing and that the district court had not given any consideration to the existence of a material dispute, but instead focused incorrectly on whether the prosecutor had the authority to issue the certification. *Id.* at 1215-16.

8

how the certification is flawed. Pl's Opp'n at 8-9. Stated simply, Kalil has not alleged sufficient facts that establish a *material dispute* regarding the scope of employment issue. *Stokes*, 327 F.3d at 1215; *Koch*, 209 F. Supp. 2d at 92 ("[T]he question for resolution by this Court is whether plaintiff . . . would ever be able to produce competent evidence proving that [employee] was *not* acting within the scope of his employment."). Accordingly, the Court upholds the certification in this case, finds that Cooksie and Little were acting within the scope of their employment during the pertinent time period, and substitutes the United States as the nominal defendant.

2. **FECA Requires the Secretary of Labor to Render a Decision as to Scope of Coverage**

In suits against the United States, FECA provides the exclusive remedy with respect to injuries sustained by federal employees during the course of their employment. 5 U.S.C. § 8116 (2000); *see also Carroll v. Tenn. Valley Auth.*, 697 F. Supp. 508, 511 (D.D.C. 1988) (noting that FECA "provides a comprehensive and exclusive remedy for federal employees who suffer work-related 'injury or death'"). FECA defines "injury" as either an injury by accident or a disease proximately caused by the employment, *see* 5 U.S.C. § 8101(5) (2000), and precludes a plaintiff from seeking recovery for such injuries from any other federal remedial statutes, *United States v. Demko*, 385 U.S. 149, 151 n.4 (1966). Under FECA, the Secretary of Labor possesses exclusive authority to administer claims, which includes the authority to make eligibility determinations. 5 U.S.C. § 8145 (2000).

In this case, plaintiff seeks damages against defendants for IIED. Am. Compl. ¶¶ 123-

27. However, whether plaintiff can proceed with this claim *in this Court* depends on whether the claim is precluded by FECA. To date, our Circuit Court has not addressed whether the tort of IIED falls within the scope of an "injury" covered by FECA, and those Circuits that have are in disagreement on this point. *See Briscoe v. Potter*, 355 F. Supp. 2d 30, 42 n.10 (D.D.C. 2004) (citing cases with conflicting holdings); *compare Bennett v. Barnett*, 210 F.3d 272 (5th Cir. 2000) (holding that FECA coverage exists for emotional distress claims), *with Sheehan v. United States*, 896 F.2d 1168 (9th Cir. 1990) ("FECA compensates employees only for physical harm.").

In light of the lack of binding authority, this Court concludes that there is at least a "substantial question" as to whether FECA covers plaintiff's IIED claim at all. *See, e.g., Wallace v. United States*, 669 F.2d 947, 951 (4th Cir. 1982) ("In light of the authority Congress has given to the Secretary of Labor, most federal circuit courts have followed the rule that a federal employee cannot file an action under the Federal Tort Claims Act if there is a 'substantial question' whether FECA applies, . . . , or unless his injuries are 'clearly not compensable' under FECA.") (internal citation omitted). As a result, plaintiff's IIED claim is not properly before this Court unless and until the Secretary of Labor determines that such a claim is *not* covered by FECA. *See Daniels-Lumly v. United States*, 306 F.2d 769, 771 (D.C. Cir. 1962) ("[U]nless plaintiff's injuries were clearly not compensable under [] FECA . . . , we believe that the Secretary of Labor must be given the primary opportunity to rule on the applicability of the Act to this case."). Accordingly, plaintiff's IIED claim is dismissed

without prejudice.[6]

C.     *First Amendment Claim*

Finally, in Count V of the instant complaint, plaintiff alleges that defendants Cooksie and Little violated his First Amendment rights by proposing and upholding a fourteen-day suspension against him based on his protected speech in reporting what he considered to be a matter of public concern involving alleged fraud and obstruction of justice perpetrated by Cooksie.[7] Am. Compl. ¶¶ 128-29. The defendants argue that plaintiff's First Amendment claim against them is barred by the existence of the Civil Service Reform Act, 5 U.S.C. § 1101 *et seq.* ("CSRA"), a comprehensive procedural and remedial scheme for federal employees to challenge adverse personnel action. Defs.' Renewed Mot. for Partial Dismissal at 13-15. The Court agrees.

Actions for damages brought against individuals pursuant to the United States Constitution are commonly referred to as *Bivens* claims. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (holding plaintiff may sue federal agents for money damages for violation of his Fourth Amendment right against

---

[6] *See, e.g., Bennett v. Barnett*, 210 F.3d 272 (5th Cir. 2000) (affirming district court's decision to dismiss plaintiff's claim for IIED without prejudice pending the Secretary of Labor's ruling on FECA coverage).

[7] As previously discussed, the FTCA, as amended, provides a plaintiff with the exclusive remedy for common law torts perpetrated by federal employees acting within the scope of their employment and precludes any other civil action or proceeding for money damages. *See* 28 U.S.C. § 2679 (b)(1) (2000). However, the FTCA does not apply to civil actions brought against federal employees for a violation of the United States Constitution. *See* 28 U.S.C. § 2679 (b)(2)(A) (2000). Therefore, the FTCA does not act as a bar to plaintiff's constitutional claims. *See* H.R. Rep. No. 100-700, at 6, *reprinted in* 1988 U.S.C.C.A.N. 5945, 5950 (noting the FTCA "would not affect the ability of victims of constitutional torts to seek personal redress from [f]ederal employees who allegedly violate their Constitutional rights.").

unreasonable search and seizure). However, two instances exist where it is not appropriate to award money damages. *Id.* at 396. First, when there are "special factors" counseling against it. *Id.* Second, when there is a congressional declaration prohibiting recovery of monetary damages or remitting recovery to another equally effective remedy. *Id.* In a motion to dismiss, the defendant bears the burden to prove the existence of one of these instances. *See Carlson v. Green*, 446 U.S. 14, 18-19 (1980). The defendants have done so here by relying on the "special factor" of a comprehensive procedural and remedial scheme for federal employees challenging a prohibited personnel action: the CSRA. *Bush v. Lucas*, 462 U.S. 367, 389-90 (1983).[8]

The definition of "prohibited personnel actions" includes those actions which violate the Merit Systems Principles. 5 U.S.C. § 2301(b)(2) (2000). This includes the principle that "all employees . . . should receive fair and equitable treatment in all aspects of personnel management . . . with proper regard for their . . . constitutional rights." 5 U.S.C. § 2302(b)(11) (2000). This also includes actions taken against an employee "because of any disclosure of information by an employee or applicant which the employee or applicant

---

[8] In *Bush*, plaintiff alleged that his First Amendment rights were violated after he was demoted for speaking out publicly against his employer. *Id.* at 369-71. Although the Court assumed for the sake of discussion that the plaintiff's First Amendment rights were violated, it declined to authorize a *Bivens* remedy because the administrative review mechanisms set forth in the CSRA provided sufficient redress for plaintiff's claims. *See id.* at 372, 385, 390; *see also Spagnola v. Mathis*, 859 F.2d 223, 224 (D.C. Cir. 1988) (en banc) ("[C]ourts must withhold their power to fashion damages remedies when Congress has put in place a comprehensive system to administer public rights, has 'not inadvertently' omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve *Bivens* remedies."); *Hall v. Clinton*, 143 F. Supp. 2d 1, 5 (D.D.C. 2001) ("[T]he CSRA is the exclusive remedy, even if it affords incomplete relief.").

12

reasonably believes evidences a violation of any law, rule or regulation or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8)(A) (2000). Kalil's allegation regarding his fourteen-day suspension constitutes such a "prohibited personnel action," *see* 5 U.S.C. § 2302(b), as set forth in the CSRA. Consequently, like the claims in *Bush* and *Spagnola*, Kalil's claim is barred due to the applicability of the CSRA and, thus, plaintiff's First Amendment claim is dismissed.

## ORDER

It is, this 26th day of July, 2005, hereby

**ORDERED** that defendants' renewed motion to partially dismiss [#43] is **GRANTED**; and it is further

**ORDERED** that the remaining parties shall appear in courtroom 7 for a Status Conference on 9/16, 2005, at 10:15 AM.

**SO ORDERED.**

RICHARD J. LEON
United States District Judge